# Illinois Official Reports

## Appellate Court

---

### *People v. James*, 2021 IL App (1st) 180509

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE JAMES, Defendant-Appellant. |
| District & No. | First District, Second Division<br>No. 1-18-0509 |
| Filed<br>Modified upon<br>denial of rehearing | March 30, 2021<br><br>August 10, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CR-17985; the Hon. Stanley J. Sacks and the Hon. Ursula Walowski, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Alison L.S. Shah, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Brian K. Hodes, and Craig Taczy, Assistant State's Attorneys, of counsel), for the People. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
            Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in
            the judgment and opinion.


                              **OPINION**

¶ 1      Following a jury trial, defendant George James was found guilty of possession of a
controlled substance with intent to distribute and sentenced to 10 years' imprisonment. On
appeal, defendant contends that his trial counsel was constitutionally ineffective for failing to
file a motion to suppress the drug evidence seized. In addition, defendant contends that the
State's closing argument was unduly prejudicial, inflammatory, and not based on the trial
evidence. We affirm.


¶ 2                              I. BACKGROUND
¶ 3      Defendant was arrested and then charged with the above-stated drug offense after police
observed him around noon on October 9, 2015, making three drug deals from a garage in
Chicago's North Lawndale neighborhood. Trial evidence established the following.

¶ 4      Chicago police detective Jose Duran testified that on the day in question, he was then an
officer conducting narcotics surveillance on the 1600 block of South Hamlin Avenue, a
residential area. At that time, he also maintained radio contact with his team of enforcement
officers, some of whom were in a car. Using a monocular (defined as one-half of binoculars)
and with an unobstructed daytime view, Officer Duran set up surveillance in front of two
houses on the Hamlin Avenue side of the street. From there, he spotted defendant through the
monocular riding his bike up and down in the alley near Ridgeway Avenue. Meanwhile,
Officer Duran saw another person working on a car in the nearby vacant lot.

¶ 5      Defendant alighted from his bike and gestured for a male Hispanic, who was walking
northbound in the alley, to come over. The two spoke briefly, and defendant pocketed the
man's money. Defendant then walked into an open garage[1] two houses north of 18th Street,
where he stood next to a waist-high blue container, which appeared to be a 50-gallon drum.
The drum was open and exposed on the top. Defendant reached inside and picked up a cloth
material, which he manipulated, then pulled out a plastic bag containing several items bearing
some sheen to them. Defendant removed an item, pushed the bag back inside the cloth, and
placed the cloth back inside the drum. Defendant returned to the man and presented the item
so as to complete what Officer Duran, in his experience, believed was a hand-to-hand drug
transaction. The man then left the alleyway, while defendant remained. Defendant essentially
repeated this same hand-to-hand transaction with two other individuals.

¶ 6      Following the third drug deal, Officer Duran saw defendant return to the garage, grab the
cloth, and remove the bag from it, obtaining an item. He then put the bag and cloth back.
Defendant placed the item in his left pocket as he exited the garage. Defendant began biking
northbound in the alley towards 16th Street, and Officer Duran subsequently followed
defendant via car, detaining him just over a block away. On encountering Officer Duran,

---

[1]Officer Duran specifically testified that the garage was "open" and defendant "proceeded to walk
into" it. He testified that the garage door was "open the whole time."

defendant said, "Officer, I'm not going to lie. I got blow [aka heroin] in my pocket." Officers then obtained the tinfoil packet containing suspect heroin from defendant's left pants pocket and arrested him.

¶ 7    Meanwhile, via radio, Officer Duran had directed Officers Honda and John Sandoval to proceed to the garage and check inside the blue drum. Officer Sandoval (now a sergeant) testified that the drum had no lid and was filled with plastic. Inside, on top of the plastic, officers discovered a dirty cloth glove containing a plastic bag with 18 folded tinfoil packets of suspect heroin. Defendant was ultimately found with headphones, a cellphone, its case, a charger, and $64. At trial, testimony from a forensic scientist confirmed the packets contained heroin.

¶ 8    Following this evidence, the State rested, and the defense moved for a directed verdict. The defense argued that the State failed to meet its burden because Officer Duran's testimony was incredible and his procedures questionable. For example, Officer Duran did not demonstrate that he had obtained consent before sending enforcement officers into the garage to search the bin, and police had not ascertained who owned the garage. The trial court denied the motion, noting that such issues should have been raised in an earlier motion.

¶ 9    For his theory of defense, defendant denied the drug deals. Defendant's lifelong friend, Darryl Moore, who had himself previously pled guilty to a felony drug offense, testified on defendant's behalf that around noon on the day in question, they were both working together inside the garage at 1650 Ridgeway Avenue, fixing a car. While there, Moore did not see defendant go into any containers, nor did he see defendant approach anyone in the alley or give or receive anything from anyone. Instead, defendant merely left the garage to go to the store, but Moore did not then see defendant speak with anyone. While Moore saw the police, he did not speak with them. Moore saw the police later enter the same garage that he and defendant had been working inside.

¶ 10   On cross-examination, Moore acknowledged he did not know what time they arrived at the garage that day, but defendant was there for several hours. Similarly, he noted that defendant never returned from the store that day or showed up thereafter, and Moore did not have defendant's number. Moore later learned he had been arrested. Moore never spoke to the Chicago police or state's attorney's office about the matter.

¶ 11   After the defense rested, the State argued in closing that, on the day in question, defendant got up, "went to work," and, like most of the public, went into "his office." However, his job happened to be one of a "drug dealer," his office was a garage, and heroin was his product. The prosecutor then contrasted that with the police officers' "job," which was to work "the streets of Chicago" and "keep the community safe." Later, the prosecutor again noted that, on the day in question, defendant "went to do his job" of selling drugs, with only one problem— "his job is a crime." The prosecutor then urged the jury to do its "job" and noted, "Your job [is] to take the evidence that was presented in this case through the testimony of the witnesses and the exhibits and apply the facts of this case to the law that you're going to receive." The prosecutor noted when the jury did that, it would find defendant guilty of two counts of possession of a controlled substance with intent to deliver.

¶ 12   In response, defense counsel noted that the State was "right about one thing"—defendant "did go [to] his office that morning," which was the garage. "His job was to work on cars." The defense then went on to attack Officer Duran's credibility and argued that the evidence was uncorroborated.

¶ 13		In rebuttal, the State sought to establish the evidence and testimony as credible, reasonable, and supported. The prosecutor asserted that on the day in question, the officers sought to "rid that neighborhood of someone plaguing it with narcotics sales" and "did their job." The prosecutor urged the jury members to use their common sense, "[l]ook at everything," and "come out head held high with" a guilty verdict, since that is what the evidence and justice demanded. Other points were argued in closing and rebuttal, which shall be discussed further below.

¶ 14		Following evidence and argument, the jury found defendant guilty of possession of a controlled substance with intent to deliver.[2] The trial court sentenced defendant, based on his prior record as a Class X offender, to 10 years' imprisonment. Defendant appealed.

¶ 15							II. ANALYSIS

¶ 16		Defendant first contends that his trial counsel was constitutionally ineffective for failing to file a motion to suppress the drug evidence. Under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Dupree*, 2018 IL 122307, ¶ 44. As to a suppression motion, the decision whether to file it is generally " 'a matter of trial strategy, which is entitled to great deference.' " *People v. Gayden*, 2020 IL 123505, ¶ 28 (quoting *People v. White*, 221 Ill. 2d 21 (2006)). To establish prejudice resulting from failure to file such a motion, a defendant must show that the unargued suppression motion is "meritorious"—*i.e.*, that it would have succeeded—and that a reasonable probability exists that the trial outcome would have been different without the challenged evidence. *People v. Henderson*, 2013 IL 114040, ¶¶ 12, 15. A reasonable probability is a probability sufficient to undermine confidence in the result at trial, and actual prejudice must be shown rather than mere speculation as to prejudice. *People v. Bew*, 228 Ill. 2d 122, 135 (2008); *People v. Graham*, 206 Ill. 2d 465, 476 (2003).

¶ 17		On appeal, defendant contends that police violated his fourth amendment right to privacy in his "effects" and therefore defense counsel's failure to file a motion to suppress constituted ineffective assistance, as the motion would have been meritorious and changed the trial outcome. The fourth amendment provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV; *Collins v. Virginia*, 584 U.S. ___, ___, 138 S. Ct. 1663, 1669 (2018). Reasonableness under the fourth amendment generally requires a warrant supported by probable cause. *People v. Thornton*, 2020 IL App (1st) 170753, ¶ 25. Probable cause exists where the facts and circumstances, considered as a whole, are sufficient to justify a belief by a reasonably cautious person that the defendant is or has been involved in a crime. *Id.*

¶ 18		While warrantless searches are *per se* unreasonable, they are subject to some well-known exceptions, such as if a search is conducted with consent, a search is incident to arrest, or a

---

[2]Specifically, the jury found defendant guilty of count II, possession with intent to deliver a controlled substance of three grams or more (the substance in the packets found in the garage). However, the jury found defendant not guilty of count III, possession with intent to deliver a controlled substance of less than one gram (the substance found in his left pants pocket).

search is predicated on probable cause where there are exigent circumstances making it impractical to obtain a warrant. *People v. Cregan*, 2014 IL 113600, ¶ 25; *People v. Lundy*, 334 Ill. App. 3d 819, 832 (2002). As a result, absent application of a valid exception, the warrantless entry into a home to search for weapons or contraband is unconstitutional, even when a felony has been committed and there is probable cause to believe that incriminating evidence will be found within. *People v. Hassan*, 253 Ill. App. 3d 558, 567 (1993). In filing a motion to suppress, the defendant bears the burden of producing evidence and proving that the search and seizure were unlawful. If the defendant makes such a showing, the burden then shifts to the State to produce evidence justifying the intrusion. *People v. Martin*, 2017 IL App (1st) 143255, ¶ 18.

¶ 19    Here, defendant does not dispute that police had probable cause to arrest him and search his person. Similarly, defendant does not dispute that Officer Duran was lawfully present when he observed defendant manipulate the glove. Rather, he challenges only the search and seizure of his glove or his "effects," a fourth amendment category that has received significantly less attention than the others. See Maureen E. Brady, *The Lost "Effects" of the Fourth Amendment: Giving Personal Property Due Protection*, 125 Yale L.J. 946 (2016). The term "effects" is less inclusive than "property" and is limited to personal, rather than real, property. *Oliver v. United States*, 466 U.S. 170, 177 n.7 (1984); see, *e.g.*, *United States v. Jones*, 565 U.S. 400, 404 (2012) (noting, there is no doubt a vehicle is considered an "effect" under the fourth amendment and holding the government's installation of a GPS device on the defendant's vehicle, and use of the GPS to monitor the vehicle's movements, constituted a physical trespass and search violating the defendant's fourth amendment rights). Defendant maintains he had a fourth amendment interest in his glove (likening it to a bag or backpack), which he had ownership, control, and possession of within his garage "workplace," where he repeatedly returned to it. Defendant thus argues that the officers' warrantless search of the glove was legally unjustified since he had a legitimate expectation of privacy in its contents.

¶ 20    The State denies any fourth amendment violation, claiming that police searched and seized the glove based on probable cause. The State first notes in its brief that Officer Duran had observed three narcotics transactions and argues that the search and seizure of the glove was lawful as incident to defendant's arrest (one of the exceptions to the warrant requirement identified above). The State likens this case to *Lundy*, 334 Ill. App. 3d at 832-33, wherein officers performed a valid search of a box from which the defendant had been observed repeatedly retrieving narcotics, and the search was "limited to an area within [the] defendant's immediate control."

¶ 21    Indeed, a search incident to arrest falls under two lines of analysis, involving, first, the search of the person of the arrestee and, second, the search of the area under the control of the arrestee. *Cregan*, 2014 IL 113600, ¶ 25. A search of the person requires that the arrestee be in actual physical possession of the item, while a search of the area within the arrestee's immediate control requires that the arrestee be within reaching distance of the item. *Arizona v. Gant*, 556 U.S. 332, 335, 339, 346 (2009); *Cregan*, 2014 IL 113600, ¶¶ 41, 50-51. As to the latter category, the arrest must be justified by the possibility that the arrestee might gain possession of a weapon or destroy evidence. *Gant*, 556 U.S. at 339; *Cregan*, 2014 IL 113600, ¶¶ 29, 31. Warrantless searches of property seized at the time of arrest cannot be justified as incident to that arrest if the search is remote in time or place from the arrest. *United States v. Chadwick*, 433 U.S. 1, 15 (1977).

¶ 22        As defendant observes, he was arrested a little over a block from the garage. His arrest took place around the time that the other enforcement officers entered the garage pursuant to the radio dispatch to search and seize the glove containing defendant's drugs. As defendant notes, the glove and drugs were clearly not immediately associated with his person or within his immediate control since he was not in physical possession of them or even near them when arrested. Notably, at oral argument, the State abandoned its search-incident-to-arrest argument, perhaps recognizing that in light of *Cregan*, cited above, it was incredulous at best. Given that fact, the concession is quite appropriate and one we accept.

¶ 23        The State alternatively argues that there was no trial evidence showing ownership or a privacy interest in the glove or garage. See *Henderson*, 2013 IL 114040, ¶ 22 (noting that the record is frequently incomplete or inadequate to evaluate an ineffectiveness claim based on an unfiled suppression motion). We agree.

¶ 24        Notably, the fourth amendment protects people, not places. *Katz v. United States*, 389 U.S. 347, 351 (1967). Fourth amendment rights are personal, and as such, the person whose rights were infringed upon retains the sole authority to exclude any evidence illegally searched or seized. *People v. Rosenberg*, 213 Ill. 2d 69, 77 (2004). To claim protection under the fourth amendment, a person must have exhibited an actual subjective expectation of privacy in the place searched or thing seized, and this expectation has to be one that society is willing to recognize as reasonable. *Martin*, 2017 IL App (1st) 143255, ¶ 20; see also *Rosenberg*, 213 Ill. 2d at 77. What is considered "reasonable" has roots in real or personal property law or recognized societal understandings. *Rosenberg*, 213 Ill. 2d at 77. Whether a defendant has a legitimate expectation of privacy in the place searched or the property seized thus depends on factors, including (1) property ownership, (2) whether the defendant was legitimately present in the area searched, (3) the defendant's possessory interest in the area searched or the property seized, (4) prior use of the area searched or property seized, (5) ability to control or exclude others' use of the property, and (6) a subjective expectation of privacy in the property. *People v. Lindsey*, 2020 IL 124289, ¶ 42; *Rosenberg*, 213 Ill. 2d at 78. Whether one has a legitimate expectation of privacy in an area searched is measured by an objective standard drawn from common experience and based on the totality of the circumstances in each case. *Id.*

¶ 25        Applying the above-stated factors here, the record is silent as to who owned the garage and its contents; whether it was a proper commercial business, a freestanding garage, or a garage attached to a home such that it could constitute curtilage[3]; defendant's possessory relationship to the garage and its contents, such as whether he stored his tools, clothing, or *gloves* there; defendant's ability to exclude others from the garage; and defendant's prior use of the garage (other than for his drug deals on the day in question).[4] These factors and the totality of the

_____

[3]The curtilage is the area immediately surrounding and associated with the home, such that it is considered part of the home itself for fourth amendment purposes. An officer who physically intrudes on the curtilage to gather evidence needs a warrant. *Collins*, 584 U.S. at ___, 138 S. Ct. at 1670.

[4]As part of its case, the State submitted two photographs of the garage (exhibits 5 and 6), and Officer Duran testified that they depicted the garage defendant used to store his drugs. The photos show a white garage door surrounded by what appear to be green-leaved tree branches. However, neither is a close-up image that answers the questions set forth above that would enable this court to determine defendant's privacy interest in the space.

circumstances do not weigh in defendant's favor to establish any reasonable expectation of privacy in the garage or glove.

In support of his fourth amendment privacy claim, defendant nonetheless points to his friend Moore's defense testimony that defendant worked with him in the garage every day fixing cars. See *People v. Rios*, 278 Ill. App. 3d 1013, 1016 (1996) (noting, courts have held that a person may have a legitimate expectation of privacy in an area where he works). Defendant ignores that Moore also testified that defendant was working in the garage on the day in question and basically did not conduct any drug sales. The jury, however, found Moore incredible, choosing to convict defendant based on the competent testimony of Officer Duran, who conveyed that *no one* was fixing cars in the garage that day (rather, someone was fixing a car in the nearby abandoned lot) and defendant was instead using the garage as a "workplace" for drug dealing, not car mechanics. Defendant does not challenge the sufficiency of the evidence on appeal and cannot now claim that Moore's testimony should be elevated above that of Officer Duran's to support an unfiled motion to suppress.

Even accepting Moore's testimony about defendant's workplace, the evidence remains insufficient to establish that defendant had a privacy interest in the garage based on the above-stated factors. Because defendant cannot establish a fourth amendment privacy interest in the garage, he cannot establish that the police violated his rights when they entered the garage absent a warrant. Given the record, the garage was equivalent to an open area or public place.

For the same reason, we reject defendant's insistence that he had a specific privacy interest in the glove based on his handling of it. Notably, when personal property effects are *not* located inside the person's home or pocket, there is little guidance for whether the property is entitled to fourth amendment protection, yet there is no doubt that such protection extends outside the home. See *Chadwick*, 433 U.S. at 8; Brady, *supra*, at 948.

Here, we find *United States v. Alewelt*, 532 F.2d 1165 (7th Cir. 1976), instructive. In *Alewelt*, pursuant to a tip about a bank robbery in which the defendant was allegedly involved, the FBI went to the opened-door state workplace of defendant's mother and seized from the coat rack the defendant's leather jacket, which had a cloth cap and money bundles visibly sticking out of the pocket. *Id.* at 1166-67. *Alewelt* rejected the defendant's argument on appeal that he had a reasonable expectation of privacy in his jacket such that the agents' warrantless seizure of it violated his fourth amendment rights. *Alewelt* held that

> "by placing the jacket on a coat rack in the general working area of an outer office where he had no possessory interest, the defendant relinquished that degree of control, and reasonable expectation of privacy, necessary to sustain a challenge to the legality of the subsequent search and seizure on Fourth Amendment grounds." *Id.* at 1168 (citing *Katz*, 389 U.S. 347).

The court noted that the workplace was occupied by employees and members of the public and the coat rack was placed in such a manner that a person in the public hall could see the jacket through the doorway without even entering the room. These were facts defendant knew or should have known. *Alewelt* concluded, " 'What a person knowingly exposes to the public *** is not a subject of Fourth Amendment protection.' " *Id.* (quoting *Katz*, 389 U.S. at 351).[5]

---

[5]In addition to stating that what a person knowingly exposes to the public is not subject to fourth amendment protection, *Katz* also stated that what a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." 389 U.S. at 351. The "invited exposure"

¶ 30    Relying on *Alewelt*, in *People v. Loveless*, 80 Ill. App. 3d 1052, 1054 (1980), this court similarly held that the defendant, who sat at the bar in a club, initially had no reasonable expectation of privacy to his coat, which was resting on the table directly across from him. *Loveless* reasoned:

> "An individual who places a coat on a table in a busy tavern must reasonably expect that that coat will be touched or handled by an employee or by any member of the public who desires to use or sit at that table. Indeed, it is unreasonable to assume that it will not be. By placing his coat on the table, Loveless knowingly exposed it to the public, and as a consequence had then no reasonable expectation of privacy with regard to it." *Id.*

¶ 31    Here, consistent with *Alewelt* and *Loveless*, defendant has not shown any privacy interest in the single dirty glove resting atop a plastic-filled drum in an open garage, to which he has failed to establish any possessory interest. First, defendant conducted all his drug deals in the public alleyway with the garage also left open to the public. He then left the glove unattended in the open garage as he went to the store, thus relinquishing a degree of possession, control, and presumptive fourth amendment interest in it. Even if we were to credit his argument that the garage was his workplace (which we do not), he would have left his glove exposed for any coworker or member of the public to handle. The police officers' viewing of what defendant had made available for inspection did not violate the fourth amendment. See *United States v. Jacobsen*, 466 U.S. 109, 119 (1984). In other words, defendant could not reasonably expect the glove to be private, notwithstanding his efforts to conceal the drugs inside.

¶ 32    We therefore must reject his contention that the glove in this instance can be likened to a sealed container one intends to keep private. *Cf. Chadwick*, 433 U.S. at 11 (noting that the respondents, by placing personal effects inside a double-locked footlocker, manifested an intent that the contents remain free from public examination). Taking defendant's argument to its logical conclusion, any lost and found glove picked up on the street by police could be considered a fourth amendment violation. A glove is not typically a place to store anything but a cold or unprotected hand. See *Rosenberg*, 213 Ill. 2d at 78 (noting that whether one has a legitimate expectation of privacy in an area searched is measured by an objective standard drawn from common experience). As such, we do not believe societal standards of privacy support defendant's argument given these facts.

¶ 33    Defendant's reliance on *United States v. Ross*, 456 U.S. 798 (1982), to support his argument that the glove was akin to a container, is misplaced. In *Ross*, the United States Supreme Court held that if police had probable cause to search a lawfully stopped vehicle, they likewise had probable cause to search the vehicle's contents, including containers, that might "conceal the object of the search." *Id.* at 825. In so holding, *Ross* noted that the fourth amendment does not distinguish between "worthy" and "unworthy" containers:

> "For just as the most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion, so also may a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf claim an

---

holding is quoted much more than the "discouraged intrusion" holding. In November 2015, it was tabulated that the invited exposure holding was quoted in isolation in 481 federal and state cases, while the latter was quoted in isolation in just 80 such cases. Brady, *supra*, at 971.

equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attaché case." *Id.* at 822. Defendant insists that his glove, "despite being lowly and unusual, is still a container," thus implying that to hold otherwise would distinguish worthy from unworthy containers.

¶ 34    Defendant's argument ignores the facts of this case, discussed above. Had defendant truly intended to keep his possessions private, we believe he would have thought twice about leaving the glove exposed in multiple instances. As *Ross* noted, context with regard to "containers" matters. *Id.* at 823; see also Brady, *supra*, at 951-52.

¶ 35    That brings us to another point. Defendant does not dispute that police had probable cause to believe he was conducting drug transactions from the garage and storing the suspect contraband in his glove. See *Thornton*, 2020 IL App (1st) 170753, ¶ 25; *Martin*, 2017 IL App (1st) 143255, ¶ 35. Had defendant's glove been secured in his home, probable cause alone *would not* have supported police entry without a warrant or some exception to the warrant rule. See *Hassan*, 253 Ill. App. 3d at 567. However, that was not the case here since the glove was left unattended in the open garage. In addition, just prior to his arrest, defendant admitted that he was carrying "blow" or heroin. The drugs found on defendant were the same that Officer Duran had observed defendant taking from the glove. Per Officer Duran's testimony, this merely strengthened the probable cause to not only seize the glove, but to search it, and lent validity to the officers' actions via the plain view doctrine.[6] See *Martin*, 2017 IL App (1st) 143255, ¶ 31 (noting, for the plain view doctrine, the officers must be lawfully in a position to view the object; the object's incriminating character must be immediately apparent; and the officers must have a lawful right of access to the object). Indeed, courts have held that when it's obvious as to what's inside a container, such as when police officers have knowledge of the container's contents, the container supports no reasonable expectation of privacy, and its contents are considered to be in "plain view." *People v. Jones*, 215 Ill. 2d 261, 279 (2005).

¶ 36    The touchstone of a fourth amendment analysis "is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' " (Internal quotation marks omitted.) *Id.* at 268 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977)). On this record, it was not unreasonable for the police to enter the garage and, while acting collectively, search the glove, thereby seizing the contraband. See *People v. Ortiz*,

---

[6]As set forth, the record shows that defendant was arrested when he admitted he had heroin while he was still over a block away from the garage. The record, however, is unclear as to whether defendant's admission and arrest were before enforcement officers searched his glove for drugs or afterwards. Officer Duran stated that when he returned to the garage, the other officers were already there, and Officer Duran then instructed them to check inside the blue drum. Officer Sandoval, however, testified that they searched the glove before Officer Duran returned to the garage. Specifically, Officer Sandoval testified that they were in radio communication with Officer Duran, who then stopped defendant: "We informed him that we had recovered heroin and he came back to the location with the Defendant." Officer Duran's testimony would tend to support a slam-dunk application of the plain view doctrine, since the identity of the contraband in the glove would then be immediately apparent given defendant's admission of carrying heroin. See *Hassan*, 253 Ill. App. 3d at 570 (noting, the seizure of property in plain view in public is not an invasion of privacy and is reasonable if there is probable cause to associate the property with criminal activity). Regardless, we note that probable cause existed to believe that the glove contained contraband, and it remains defendant's burden to prove the search and seizure were illegal. See *Martin*, 2017 IL App (1st) 143255, ¶ 18.

355 Ill. App. 3d 1056, 1065 (2005) (where officers are working together to investigate a crime, the knowledge of each constitutes the knowledge of all, and probable cause can be established from all the information collectively received by the officers). In fact, given the circumstances, it would have been *unreasonable* to require police to secure a warrant before doing so, given that the glove so apparently contained drugs. See *Jacobsen*, 466 U.S. at 121-22 (noting, "for it is well settled that it is constitutionally reasonable for law enforcement officials to seize 'effects' that cannot support a justifiable expectation of privacy without a warrant, based on probable cause to believe they contain contraband"). Although defendant maintains he clearly aimed to conceal his illegal drug activity, " '[t]he test of legitimacy is not whether the individual chooses to conceal assertedly "private" activity' " but " 'whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment.' " *Lindsey*, 2020 IL 124289, ¶ 42 (quoting *Oliver*, 466 U.S. at 182-83); see also *Jacobsen*, 466 U.S. at 123 (noting, "governmental conduct that can reveal whether a substance is cocaine, and no other arguably 'private' fact, compromises no legitimate privacy interest"). Here, there was no governmental intrusion in violation of the fourth amendment. Based on the foregoing, we need not discuss the parties' alternative arguments as to the inevitable discovery rule.

¶ 37    Because a motion to suppress the drugs would not have been granted on the basis of this record, defendant cannot satisfy his burden under *Strickland*. See *Henderson*, 2013 IL 114040, ¶ 51; see also *Gayden*, 2020 IL 123505, ¶¶ 29, 36 (noting that the record was insufficient to fully address and resolve the defendant's ineffectiveness claim). In other words, defendant cannot establish prejudice under *Strickland* where he cannot show the unargued motion is meritorious. See *Henderson*, 2013 IL 114040, ¶¶ 12, 15. Accordingly, we reject defendant's claim that his trial counsel was ineffective. *Id.*

¶ 38    Defendant next argues that the prosecutor made inaccurate and improper remarks during the State's closing argument denying him a fair trial. At the outset, we note that defendant failed to object to the issues he now raises. Objections to closing argument must be made at trial to be preserved for review. *People v. Alvidrez*, 2014 IL App (1st) 121740, ¶ 25. Raising some or all the issues in a posttrial motion is insufficient to preserve them for appeal. See *People v. Naylor*, 229 Ill. 2d 584, 592 (2008) (both a trial objection and a written posttrial motion raising the issue are required). Nonetheless, defendant argues the alleged errors fall under the plain-error exception to forfeiture. However, the first step of plain-error review is determining whether any error occurred as to closing arguments. *People v. Deramus*, 2014 IL App (1st) 130995, ¶ 20.

¶ 39    It is well settled that a prosecutor is allowed a great deal of latitude in closing argument and has the right to comment upon the evidence presented and upon reasonable inferences arising therefrom, even if such inferences are unfavorable to the defendant. *People v. Hudson*, 157 Ill. 2d 401, 441 (1993). The prosecutor may also respond to comments by defense counsel that clearly invite a response. *Alvidrez*, 2014 IL App (1st) 121740, ¶ 26. However, a prosecutor must refrain from making improper, prejudicial comments and arguments. *Hudson*, 157 Ill. 2d at 441. Even if a prosecutor's closing remarks are improper, they do not constitute reversible error unless they result in substantial prejudice to the defendant, such that absent those remarks the verdict would have been different. *Id.* Whether we review this matter *de novo* or for an abuse of discretion, the result is the same. See *Alvidrez*, 2014 IL App (1st) 121740, ¶ 26 (noting the standard is unclear). That is, viewing the remarks in the context of the entire closing

argument, as we must, we conclude there was no reversible error committed here. See *People v. Nicholas*, 218 Ill. 2d 104, 122 (2005).

¶ 40    Defendant first contends that, during closing arguments, the prosecutor improperly "pitted" defendant "against law-abiding citizens and police officers protecting the community." Defendant takes issue with the prosecutor's comments that while defendant was hard at work dealing drugs, the police were hard at work cleaning up the neighborhood. Defendant relies on *People v. Wheeler*, 226 Ill. 2d 92, 129 (2007), wherein our supreme court stated, "it is improper for a prosecutor to utilize closing argument to forge an 'us-versus-them' mentality that is inconsistent with the criminal trial principle that a jury fulfills a nonpartisan role, under the presumption that a defendant is innocent until proven guilty." In the lengthy closing in *Wheeler*, the prosecutor (who likened himself to a lone avenging champion) repeatedly disparaged the defense attorneys and propped up the State's police officer witnesses, calling them the "thin blue line" protecting jurors against personal break-ins and assaults. The prosecutor thus used threats and scare tactics, rather than focusing on defendant's guilt or innocence in light of the evidence, to persuade the jury that convicting defendant was necessary to preserve their own safety. *Wheeler* held such tactics were meant only to inflame the passions and prejudices of the jury, they were improper, and they were a material factor in the defendant's conviction.

¶ 41    The closing in this case is a far cry from that in *Wheeler*. Here, the prosecutor's rather matter-of-fact comments comparing and contrasting defendant's drug dealer job with the police were not utilized to inflame the jury's passions or dissuade the jury from fulfilling its nonpartisan role, as in *Wheeler*. Rather, the prosecutor urged the jury to consider "the evidence that was presented in this case through the testimony of the witnesses and the exhibits and apply the facts of this case to the law that you're going to receive." In rebuttal, the prosecutor urged the jury members to use their common sense, "[l]ook at everything," and "come out head held high with" a guilty verdict since that is what the evidence and justice demanded. The prosecutor did not unduly elevate the police witnesses above the defense in her limited exhortations, and moreover, it is entirely proper for the prosecutor to dwell upon the evil results of crime and to urge the fearless administration of the law. *People v. Harris*, 129 Ill. 2d 123, 159 (1989). Nothing about the prosecutor's mildly dramatic comments, viewed in context, come near the egregiousness of those in *Wheeler*.

¶ 42    Moreover, it is not improper for a prosecutor to refer to the defendant in a drug case as a "businessman" or to highlight the defendant's profit motive, where there is evidence showing that the defendant sold narcotics. *Deramus*, 2014 IL App (1st) 130995, ¶ 44. Here, the State offered evidence showing that defendant engaged in three hand-to-hand drug transactions for profit and admittedly carried heroin. Given this evidence, there was nothing impermissible in characterizing defendant's job as being a drug dealer, which is indeed a crime. See *People v. Willis*, 409 Ill. App. 3d 804, 814 (2011) (noting that a prosecutor may comment on trial evidence and any fair, reasonable inferences arising therefrom, even if such inferences reflect negatively on the defendant). As such, the comments were grounded in and a fair comment on the trial evidence.

¶ 43    Notably, during closing, the defense took advantage of the State's opening comments to emphasize that defendant's job was as a mechanic fixing cars, a factual dispute created by the evidence. It is also not lost upon us that defendant continues to maintain on appeal that the garage was his workplace, which is somewhat at odds with his current complaint about the

- 11 -

State's closing. Considering the complained-of comments in context, we cannot say they were improper.

¶ 44 Defendant next contends the prosecutor referenced facts not in evidence and also misstated testimony during rebuttal argument. The State responds that the challenged remarks were invited by the defense and were based on the trial evidence, as well as reasonable inferences flowing therefrom. See *People v. Evans*, 209 Ill. 2d 194, 225 (2004) (noting that when defense counsel provokes a response, the defendant cannot complain the prosecutor's reply denied him a fair trial); *People v. Miller*, 2020 IL App (1st) 163304. We agree with the State, as we address each of the three claimed errors in turn.

¶ 45 First, in closing, the defense challenged Officer Duran's testimony as incredible, where there was no video, photo, or audio record of the drug buys. The defense asserted that "[e]verybody had access to recording equipment for this operation and none of it was used," even though Officer Duran had stated that recording equipment was unavailable for his district-level narcotics operations and that taking out such equipment was not part of his "job description." In rebuttal, the prosecutor countered that the police cannot simply "pull out their own phone and start using it" (a comment to which defense counsel objected, and which was sustained). The prosecutor continued, "[a]n officer cannot pull out his own personal cellphone and use it for police work. Can't be done."

¶ 46 Defendant now argues that there was no evidence to support that legal or departmental regulations precluded Officer Duran from using his own cellphone. However, Officer Duran's cross-examination testimony essentially supported such a conclusion, and the prosecutor's comment was grounded in his statement that he did not use his personal cell phone for work purposes. Moreover, the prosecutor's statement was a reasonable inference to draw on the evidence and a fair response to the defense's unsupported assertion that the officers all had access to recording equipment. We find no error.

¶ 47 Second, in closing, the defense challenged Officer Duran's testimony as incredible, where the police officers failed to investigate the drug buyers to verify that they had indeed purchased the drugs. In rebuttal, the prosecutor argued that the buyers were not stopped because "word travels fast on the street if buyers start getting stopped the next block over people are going to know." While the defense objected to this, the court merely admonished the jury that attorney arguments are not evidence and allowed the prosecutor to proceed. The prosecutor then told the jury to use common sense and noted, hypothetically, if there were a drug dealer in court "where I'm standing" with his customers leaving, and the customers get arrested outside the courtroom doors, then the drug dealer would get away, the buyers would cease, the investigation would be thwarted, and the officer safety would be jeopardized. The prosecutor noted that, in this case, that is why stopping the buyers was not done.

¶ 48 Contrary to defendant's contentions otherwise, we find that the prosecutor's rebuttal was responsive and reasonably grounded in the evidence and inferences arising therefrom where Officer Duran stated on cross-examination that officers declined to pursue the drug purchasers in this case because "[l]ogistically we couldn't. It was too wide open. It would compromise the surveillance if we were to stop these individuals."

¶ 49 Third, in closing, the defense challenged Officer Duran's testimony as incredible, where there was no fingerprint evidence linking defendant to the drug deals. The defense asserted: "They didn't even bother and try. This is not CSI. This is something that is a simple procedure and they just didn't do it. And it goes to show how the entire case was approached." In rebuttal,

the prosecutor stated this was not a "who done it" scenario necessitating fingerprint evidence, as with an unobserved burglar who leaves a crowbar behind as the only evidence of the crime. Rather, the prosecutor offered, that there was a "trained officer sitting nearby using visual aids" to observe defendant's transactions and then arrest him. The prosecutor stated that Officer Duran's identification of defendant obviated the need for fingerprint testing.

¶ 50     For the same reasons stated above, we find the prosecutor's response perfectly reasonable and responsive, given the evidence and inferences, especially in light of the defense's unsupported assertion that fingerprinting was a simple procedure. We find no error in the prosecutor's closing and certainly no reversible error resulting in substantial prejudice. See *Hudson*, 157 Ill. 2d at 441. We further note that the trial court provided the jury with curative instructions, admonishing them at opening and closing that attorney arguments were not evidence and any statements not based on the evidence should be disregarded. See *Willis*, 409 Ill. App. 3d at 814.

¶ 51     Last, we note that even if any of the complained-of comments in closing constituted error, they did not amount to plain error affecting substantial rights. See *Naylor*, 229 Ill. 2d at 593 (noting that a reviewing court may consider unpreserved error where the evidence is closely balanced, such that the error threatened to tip the scales of justice against the defendant, or where the error is so serious that it challenged the integrity of the judicial process). Also, this was not a closely balanced case, where Officer Duran's testimony was corroborated by testimony of Officer Sandoval, the physical evidence, and lab results, as well as the photographs, but the defense had no corroborating evidence. See *People v. Montgomery*, 2018 IL App (2d) 160541, ¶ 31 (courts have found no "credibility contest" when one party's version of the events was either unrefuted, implausible, or corroborated by other evidence). In short, defendant's claims of error at closing must fail.

¶ 52     Having found no error, we cannot say defense counsel was constitutionally ineffective in failing to object to the complained of comments, as defendant now argues.

¶ 53                                    III. CONCLUSION

¶ 54     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 55     Affirmed.