2023 IL App (2d) 210738-U
No. 2-21-0738
Order filed May 15, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-2030 |
| DIEGO MASCOTE, | ) ) ) | Honorable Salvatore LoPiccolo, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State did not shift the burden of proof to defendant through its remarks in rebuttal argument that if defendant had not been drinking, as he claimed to the arresting officer, then he would have agreed to a breathalyzer test. The remarks were an appropriate comment on defendant's state of mind and a challenge to his credibility. Even if the remarks were improper, reversal is not warranted because any error was (1) cured by the trial court's admonishments and instructions to the jury and (2) harmless in the context of the whole rebuttal argument.

¶ 2    Defendant, Diego Mascote, was charged with aggravated driving while under the influence of alcohol (625 ILCS 5/11-501(a)(2) (West 2018)). At his jury trial, the arresting officer was the only witness who testified. The officer detailed the indicia of intoxication defendant exhibited the

night he was arrested. After defendant rested without presenting any evidence, closing arguments began. In rebuttal, the State referenced that defendant refused to take a breathalyzer test. The State urged the jury to use common sense and argued that if defendant had not consumed any alcohol, as he told the officer, then he would have willingly taken a breathalyzer test. Defendant objected, and the court sustained the objection and admonished the jury. Also, before the jury deliberated, the court instructed the jury about the State's burden of proof, among other things. Before sentencing, defendant moved for a judgment notwithstanding the verdict or a new trial, arguing, among other things, that the State made improper comments during rebuttal that shifted the burden of proof to defendant. The court denied the motion and sentenced defendant to 30 months of probation and 180 days in jail. At issue in this appeal is whether the comments the State made in rebuttal were improper because they shifted the burden of proof to defendant. We determine they were not improper. Accordingly, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      When impaneling the jury, the trial court asked each venireperson whether he or she understood that (1) defendant was presumed innocent, (2) defendant did not have to present any evidence, and (3) the State had to prove defendant's guilt beyond a reasonable doubt. Each venireperson acknowledged and accepted these admonishments. After the jury was chosen, the court admonished the jury that neither opening statements nor closing arguments are evidence.

¶ 5      At trial, the only evidence presented was testimony from Elgin police officer Jonathan Cox, the arresting officer, and recordings taken from Cox's squad car and body cameras.

¶ 6      Cox testified that, on the night of May 22, 2019, he was in an unmarked squad car parked on Mountain Street near the T-intersection with State Street. Mountain Street runs east-west and ends at State Street, which runs north-south. Mountain Street ascends a steep hill west of State

Street. Although the intersection is well lit, the area on Mountain Street to the west of the intersection is dark. Cox was parked on the hill west of the intersection, facing east and observing traffic on State Street. Cox's objective was to arrest drivers using cell phones without hands-free technology.

¶ 7     At 10:05 p.m., Cox observed a car traveling east on Mountain Street and approaching his squad car from behind. The car was moving very slowly and did not have its headlights on. Cox looked over at the car, approximately 10 feet from Cox's squad car, and saw defendant driving. Cox observed defendant drinking from a bottle of beer. Cox described the bottle as a large clear bottle with foil around the neck. Defendant turned on his car's headlights as he drove past Cox's squad car.

¶ 8     Cox activated the lights on his squad car and followed defendant. Defendant stopped at the stop sign on Mountain Street and State Street. Defendant then turned right onto State Street and proceeded south to the intersection of State Street and Highland Avenue. Because defendant was not pulling over, Cox activated his siren several times. Defendant stopped at a red traffic light at State Street and Highland Avenue. When the traffic light turned green, defendant turned right on Highland Avenue, heading west. Defendant then turned right into a parking lot, where only a few cars were parked. Defendant passed areas where he could have parked, opting to stop diagonally over two lined parking spaces on the south edge of the parking lot.

¶ 9     Cox approached defendant's car and told him that he was stopped because he was (1) driving with his headlights off and (2) drinking while driving.[1]  In speaking with defendant,

_____

[1]Seated in the front passenger seat was defendant's girlfriend, Irene. Defendant told Cox that he had picked Irene up from a nearby nursing home where she worked and was driving her

Cox immediately detected an odor of alcohol on defendant's breath. Cox also noticed that defendant's speech was extremely slurred and his eyes were bloodshot and glassy. When Cox asked defendant to hand over the beer bottle from which he saw defendant drinking, defendant denied that he drank in the car or at any time that night. He said that he had been drinking only water and there was no beer in the car. Defendant also told Cox that he did not have a driver's license. A subsequent search revealed that defendant's privilege to drive was suspended.

¶ 10    Cox asked defendant to step out of the car to perform field sobriety tests. Defendant did so. Cox attempted to administer the horizontal gaze nystagmus (HGN) test, but defendant repeatedly turned his head away from Cox, motioning to the car. Cox considered this a refusal. Cox then arrested defendant for driving (1) under the influence of alcohol and (2) while his privilege to drive was suspended.

¶ 11    Cox then searched defendant's car. Cox found a bottle of Modelo beer on the floorboard by the front passenger seat. The bottle was more than half full of beer.

¶ 12    Thereafter, Cox transported defendant to the Elgin Police Department. Defendant, whose speech was mumbled and slurred, was upset and somewhat confrontational. Cox asked defendant to complete a breathalyzer, and defendant refused. Defendant's refusal was not recorded on Cox's body camera.

¶ 13    Cox asserted that, in his opinion, defendant was unfit to drive. Cox based that opinion on defendant's (1) drinking while driving, (2) extremely slurred speech, (3) nonsensical answers to questions, (4) glassy and bloodshot eyes, and (5) breath, which smelled of alcohol.

_____

home. Defendant pleaded with Cox to let Irene drive the car home. Irene began crying as the encounter continued.

¶ 14    After the State rested, defendant moved for a directed verdict. The trial court denied that motion, and defendant presented no evidence.

¶ 15    During its rebuttal, the State cited various facts that showed that alcohol lowered defendant's ability to think and act with ordinary care. The State wanted to

"break [defendant's signs of impairment] down step-by-step, because this is a case where you don't have field sobriety tests and you don't have a breathalyzer, and you don't have those things because this defendant was trying to hide his signs of impairment."

¶ 16    After detailing the indicia of defendant's intoxication, the State returned to defendant's refusal to take a breathalyzer test:

"There was a quick little bit of testimony that [defendant] refused the [breathalyzer] test. Well, ladies and gentlemen, you have to think about that refusal in the totality of the circumstances here. You have to think about that, I guess a better word is, in context of everything else; okay?

So this defendant tells the officer that he hasn't drank any alcohol. Nothing. Zero. He goes as far as to explain that he was drinking water. You heard that as he was being walked to the squad car. So once again, common sense; life experiences. If that's true what the defendant said, that he'd only been drinking water, would his response, when given the opportunity to take a breathalyzer test, to be no? That's not believable, ladies and gentlemen.

There's a reason, because he knew the result on that test would not benefit him. It would look bad. If it was as the defendant was saying, that I had nothing to drink other than water, he would be screaming, get me to the nearest breathalyzer.

MS. WILLETT [(ASSISTANT PUBLIC DEFENDER)]: Objection, Judge. That statement is not based on the evidence.

THE COURT: Sustained.

MR. MERKEL [(ASSISTANT STATE'S ATTORNEY)]: Ladies and gentlemen, if you had nothing to drink, there would be no reason to not take the breath test.

MS. WILLETT: Objection, Judge.

THE COURT: Counsel may argue, but arguments of lawyers are not to be taken as statements of law. Instructions on the law will come from me after the final arguments are completed.

So go ahead.

MR. MERKEL: Ladies and gentlemen, common sense and life experiences. Imagine being arrested for DUI and told you were under arrest for DUI and you had nothing to drink. Use your common sense and life experiences. How you would [*sic*] react in that situation?

Ladies and gentlemen, based on all the reasons that we have laid out, not using his headlights, drinking while driving, not stopping immediately, slurred speech, odor of alcohol, bloodshot, glassy eyes, failure to be able to write down his date of birth, leaning for assistance, and everything else that you've heard today and seen on the video, ladies and gentlemen, we're asking that you find the defendant guilty. Thank you."

¶ 17    The trial court then instructed the jurors that (1) their verdict must be based solely on the evidence presented, (2) they could consider a witness's interest and bias, as well as the reasonableness of the witness's testimony in light of all the evidence, (3) neither opening statements nor closing arguments are evidence, (4) opening statements and closing arguments must

be based on the evidence and reasonable inferences drawn from the evidence, (5) any statement made during opening statements or closing arguments that is not based on the evidence must be disregarded, (6) defendant is presumed innocent, (7) this presumption of innocence remains with defendant throughout every stage of the trial and during deliberations, (8) this presumption is not overcome unless, from all of the evidence, the jury is convinced beyond a reasonable doubt that defendant is guilty, (9) defendant is not required to prove his innocence, (10) the State bears the burden of proving defendant's guilt beyond a reasonable doubt, (11) the State bears this burden throughout the case, (12) the jury must determine whether defendant made various statements to Cox, and (13) if the jury determines the statements were made, they must decide what weight to give the statements.

¶ 18    The jury deliberated and found defendant guilty of aggravated DUI.  Defendant moved for a judgment notwithstanding the verdict or a new trial, arguing that the State improperly shifted the burden of proof to him when it argued during rebuttal that defendant would have taken a breathalyzer test if he had not consumed any alcohol.

¶ 19    After a hearing, the trial court denied the motion.  The court found:

> "[T]he State's argument was a consciousness of guilt argument.  This court instructed the jury that the State has the burden of proof beyond a reasonable doubt and that the defendant does not have to prove his innocence.  The Court asked all of the *Zehr* questions [(see *People v.* Zehr, 103 Ill. 2d 472 (1984))] during jury selection, and every juror acknowledged the burden of proof is on the State and that the defendant does not have to prove his innocence.  The comment did not shift the burden to the defendant."

¶ 20    Thereafter, defendant was sentenced.  This timely appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22    At issue here is whether the State's comments that defendant would have submitted to a breathalyzer test if he had not been drinking were improper because they shifted the burden of proof to defendant. In addressing this issue, we first observe that the parties disagree about whether a *de novo* or abuse-of-discretion standard of review should apply. We will not resolve here which standard governs. Whether we review the issue *de novo* or for an abuse of discretion, the result is the same. See *People v. Alvidrez*, 2014 IL App (1st) 121740, ¶ 26 ("While it is not clear whether the appropriate standard of review for this issue [*i.e.*, the propriety of the State's closing argument] is *de novo* or abuse of discretion, we need not resolve the matter, because our holding in this case would be the same under either standard."). That is, viewing the State's remarks in the context of the entire rebuttal, as we must, we conclude that the remarks were not improper. *People v. James*, 2021 IL App (1st) 180509, ¶ 39.

¶ 23    "Generally, the State is accorded wide latitude in the content of its closing arguments and it 'may comment on the evidence and on any fair and reasonable inference the evidence may yield.' " *People v. Graves*, 2012 IL App (4th) 110536, ¶ 43 (quoting *People v. Runge*, 234 Ill. 2d 68, 142 (2009)). "However, [the State] must refrain from making improper, prejudicial comments and arguments." *James*, 2021 IL App (1st) 180509, ¶ 39.

¶ 24    An example of an improper comment is one that shifts the burden of proof from the State to the defendant. Because a defendant " 'is under no obligation to produce any evidence, *** the [State] cannot attempt to shift the burden of proof to the defense[ ]' " by arguing that the defendant failed to present evidence. *People v. Curry*, 2013 IL App (4th) 120724, ¶ 80 (quoting *People v. Beasley*, 384 Ill. App. 3d 1039, 1047-48 (2008)). Indeed, "it is reversible error for the [State] to attempt to shift the burden of proof to the defense." *People v. Leger*, 149 Ill. 2d 355, 399 (1992).

¶ 25    While a comment that shifts the burden of proof is improper, a comment on a defendant's refusal to take a breathalyzer test is not. "[E]vidence of a [defendant's] refusal to take a test designed to determine the [defendant's] blood-alcohol content is admissible and may be used to argue the defendant's consciousness of guilt." *People v. Johnson*, 218 Ill. 2d 125, 140 (2005). Nevertheless, a comment in closing or rebuttal that "goes beyond [this] legitimate purpose and 'blur[s] the distinction between the defendant's state of mind and the State's burden of proof *** should not be permitted.' " *Id.* (quoting *People v. Johnson*, 353 Ill. App. 3d 954, 960 (2004)).

¶ 26    This is not to say that every improper remark the State makes constitutes reversible error. "Even if [the State's] closing remarks are improper, they do not constitute reversible error unless they result in substantial prejudice to the defendant, such that absent those remarks the verdict would have been different." *James*, 2021 IL App (1st) 180509, ¶ 39; see also *People v. Flores*, 128 Ill. 2d 66, 95 (1989) (even if the State's remarks gave "an improper impression to the jury[ ]" on the burden of proof, the remarks did not deny defendant a fair trial and, thus, did not require reversal).

¶ 27    Here, defendant challenges three specific statements: (1) "If it was as the defendant was saying, that [he] had nothing to drink other than water, he would be screaming, get me to the nearest breathalyzer;" (2) "Ladies and gentlemen, if you had nothing to drink, there would be no reason to not take the breath test;" and (3) "Imagine being arrested for DUI *** and you had nothing to drink. Use your common sense and life experiences. How you would [*sic*] react in that situation?"

¶ 28    Viewing the rebuttal argument in its entirety, as we must, we conclude that the State was simply asking the jurors to consider the evidence in light of their own experiences and common sense. Nothing about this was improper. See *People v. Jackson*, 391 Ill. App. 3d 11, 42-43 (2009)

(the State's argument based on common sense and life experience was not improper). First, the State asked the jury to consider whether, if defendant had not in fact been drinking, he would have been very eager to take a breathalyzer test. This was not only an appropriate comment on defendant's state of mind, but the State was also asking the jury to draw a proper inference on defendant's credibility. See *People v. Williams*, 2015 IL App (1st) 122745, ¶ 12 ("[The State is] allowed to comment on the evidence and reasonable inferences from the evidence, including a defendant's credibility or the credibility of the defense's theory of the case."). Second, the State argued that defendant did not want to submit to a breathalyzer test, because he knew the test results would not be favorable. Again, the State was properly commenting on defendant's state of mind, asking the jury to draw reasonable inferences. *Id.*; see also *People v. Custer*, 2020 IL App (4th) 180128, ¶ 35 (long-settled rule of law provides that, because the jury may draw reasonable inferences from the evidence, it is proper for the State in closing to urge the jury to draw reasonable inferences). Likewise, nothing prevents the State from asking the jurors what they would do if they were in the defendant's position. *Williams*, 2015 IL App (1st) 122745, ¶ 12. All the challenged comments concerned defendant's state of mind or consciousness of guilt. The State did not suggest that defendant was required to take a breathalyzer test to prove his innocence. We determine that none of these statements was improper in so far as transferring the burden of proof to the defendant.

¶ 29    Two cases guide us in determining that the State's comments were proper. In *Johnson*, the defendant had been drinking and golfing with friends before the police stopped his car because he had crossed the center line to see if he could pass a car in front of him. *Johnson*, 218 Ill. 2d at 127-28, 134. The State commented to the jury during its opening statement that it

" 'believe[d the jury was] going to hear that [the defendant] was given the opportunity to prove to the officer that he was not overly impaired by being offered to take what is called a breath alcohol test to determine how much alcohol was on his breath at the time, yet the defendant failed to do so.' " *Id.* at 128.

The defendant did not object. *Id.* The arresting officer testified for the State, and the defendant "presented a number of witnesses in his defense." *Id.* at 132. In closing argument, like during its opening statement, the State commented that the defendant, in refusing to take a breath test, " 'wouldn't take the chance to prove it once and for all.' " *Id.* at 136. Again, the defendant did not object. *Id.* The defendant was convicted of driving while under the influence, and after the appellate court affirmed his conviction, he appealed to our supreme court. *Id.* at 136-37.

¶ 30    The supreme court considered whether the State's comments were improper. *Id.* at 137-38. The court concluded that they were improper because they "suggest[ed] that [the] defendant failed to prove his innocence to the police officer by failing to take the breath test[.]" *Id.* at 140. The court explained that the State's comments went beyond merely commenting on the defendant's refusal to take a breath test and constituted an argument that the defendant failed to prove his innocence. *Id.* at 140-41.

¶ 31    In *Graves*, three officers testified for the State. *Graves*, 2012 IL App (4th) 110536, ¶ 6. Their testimony revealed that the defendant was stopped after he failed to make a complete stop at a stop sign, made a wide right turn, and drove into the oncoming lane of traffic for "25 or 50 feet." *Id.* After the defendant was stopped, an officer observed several indicia of intoxication, and the defendant failed various tests, including field sobriety tests. *Id.* ¶¶ 7-8. The defendant was arrested for driving while under the influence and given the opportunity to take a breathalyzer test. *Id.* ¶ 9. The defendant refused to take the test and denied drinking. *Id.* During closing argument, the State

pointed out to the jury that the defendant was given a chance to complete a breath test and knew, based on the admonishments he was given, that his privilege to drive would be suspended for a longer time if he refused. *Id.* ¶ 44. The State continued, " '[Defendant] chose the longer suspension. Why? Because he knew he would be over the legal limit.' " *Id.* Similarly, in rebuttal, the State argued, " 'We know that the [d]efendant refused to submit to chemical testing. [We] maintain that is because he knew he would be over the legal limit. He was told the ramifications of this. He chose not to submit [to] that breath test.' " *Id.* The defendant was convicted of aggravated driving while under the influence, and he appealed. *Id.* ¶¶ 12, 14.

¶ 32 On appeal, the defendant argued that the State made improper comments during closing that his refusal to take a breath test was proof that his blood-alcohol content was over the legal limit. *Id.* ¶ 42. The appellate court disagreed, finding that the State's comments were akin to an argument that the defendant's refusal to take a breath test showed the defendant's consciousness of guilt. *Id.* ¶ 45. In distinguishing *Johnson*, the court observed that, unlike in *Johnson*, the State did not argue that defendant's refusal to take a breath test constituted a missed opportunity for the defendant to prove his innocence. *Id.*

¶ 33 This case is closer to *Graves* than *Johnson*. At no point did the State argue, like in *Johnson*, that defendant failed to take advantage of an opportunity to prove anything, including proving his innocence to Cox by taking a breathalyzer test. Rather, like in *Graves*, the State's comments that defendant would have submitted to a breathalyzer if the results would benefit him concerned defendant's state of mind or consciousness of guilt.

¶ 34 That said, even assuming that the State's comments were improper, a conclusion we do not reach, any error was (1) cured by the trial court's admonishments and instructions and (2) harmless. First, even if the comments were improper, the trial court cured any error with the

admonishments and instructions it gave the jury. When each venire panel was called, the court ensured that each member of the panel knew and accepted that (1) defendant was presumed innocent, (2) defendant did not have to present any evidence, and (3) the State had to prove defendant's guilt beyond a reasonable doubt. After a jury was chosen and before the trial began, the trial court admonished the jury that neither opening statements nor closing arguments are evidence. When the State remarked in rebuttal that defendant would have agreed to a breathalyzer test if he had not been drinking, defendant objected, and the court sustained that objection. The court admonished the jury that they would be instructed on the law after closing arguments. The court's instructions to the jury included, among other things, that (1) neither opening statements nor closing arguments are evidence, (2) defendant is presumed innocent, (3) the State bears the burden of proving defendant's guilt beyond a reasonable doubt, (4) the State bears this burden throughout the case, and (5) defendant is not required to prove his innocence. Given all this, to the extent that the State's comments about defendant's failure to take a breathalyzer test were improper, a conclusion we do not reach, we must hold that the court's admonishments and instructions would have cured any error. *People v. Herndon*, 2015 IL App (1st) 123375, ¶ 36 ("The trial court may cure any errors by giving the jury proper instructions on the law to be applied, informing the jury that arguments are not evidence, or sustaining the defendant's objections and instructing the jury to disregard the inappropriate remark.").

¶ 35    Second, if the comments constituted error, any error was harmless. *Johnson* is instructive on this point. Although our supreme court determined that the State's comments were improper, it concluded that any error was harmless, as "the jury['s] verdict was unaffected by the improper comments." *Johnson*, 218 Ill. 2d at 143. In reaching that result, the court observed that (1) the State did not rely on the defendant's refusal to take a breath test to prove its case, (2) the defendant

and his witnesses confirmed that the defendant had been drinking, (3) the State's improper comments were brief, (4) the State did not stress "the notion that defendant 'failed to prove his innocence' " but, in fact, began and ended its closing argument by explaining *its* burden of proof, and (5) the State painstakingly pointed out all the indicia of intoxication the defendant exhibited. *Id.* at 142-43.

¶ 36    Here, as in *Johnson*, the State did not rely on defendant's refusal to take a breathalyzer test to prove its case.   Rather, as the State noted in rebuttal, there was only a "quick little bit of testimony that [defendant] refused the [breathalyzer] test."  Although, unlike in *Johnson*, defendant never admitted drinking alcohol, Cox saw defendant drinking from a bottle of beer and found that bottle in defendant's car in an area where defendant could easily reach it.   Moreover, like in *Johnson*, the State did not stress defendant's failure to take a breathalyzer test.   The State's comments at issue consisted of three statements in eight pages of transcribed argument.   The State ended its rebuttal by delineating all the indicia of intoxication presented in its case and never specifically mentioning defendant's refusal to take a breathalyzer test.

¶ 37    In conclusion, we determine that the State's comments about defendant not taking a breathalyzer test referred to defendant's state of mind or consciousness of guilt.   Because the comments did not shift the burden of proof to defendant to prove his innocence, we hold that the comments were not improper.   That said, even if the comments were improper, any error was (1) cured by the trial court's admonishments and instructions and (2) harmless.

¶ 38    We would be remiss if we did not further address the third comment made by the State, "Ladies and gentlemen, common sense and life experiences. Imagine being arrested for DUI and told you were under arrest for DUI and you had nothing to drink.  Use your common sense and life experiences.  How you would [sic] react in that situation?" The comment does not shift the

burden of proof, but asking, "How you would [sic] react in that situation" has been deemed improper in the context of arousing passions or prejudice. "It is improper to ask jury members to place themselves in the position of a party litigant when such a request is calculated to arouse their passions and prejudices [Citation]. *** Even if counsel's reference technically asked the jury to put themselves in the position of a party litigant, we do not believe that the prejudice or passions of the jury were so clearly being appealed to that a reversal would be warranted on this ground alone." *Offutt v. Pennoyer Merchants Transfer Co.*, 36 Ill. App. 3d 194, 204 (1976) (citing *Bruske v. Arnold*, 44 Ill. 2d 132, 137-38 (1969), Cert. denied, 398 U.S. 905). In the future, we suggest querying whether or not a reasonable person (rather than a juror) would react in that situation.

¶ 39                                    III. CONCLUSION

¶ 40    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 41    Affirmed.